1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICHARD ALLEN YOUNG, et al.,      )   Case No. CV 11-6731 JC
                                  )
                Plaintiffs,       )
                                  )   MEMORANDUM OPINION
        v.                        )
                                  )
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
                Defendant.        )
_____ )

## I.   SUMMARY

On August 19, 2011, plaintiff Richard Allen Young ("plaintiff" or "plaintiff Young") filed a Complaint on behalf of himself and his minor child ("plaintiff M.J.Y."), seeking review of the Commissioner of Social Security's denial of applications for benefits from plaintiff Young ("plaintiff Young's application") and plaintiff M.J.Y. ("plaintiff M.J.Y.'s application") (collectively "plaintiffs' applications").  The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiffs' Motion") with attached exhibits ("Plaintiffs' Ex.") and ("Defendant's Motion").  The Court has taken both motions under

1

1  submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 23,

2  2011 Case Management Order ¶ 5.

3      Based on the record as a whole and the applicable law, the decisions of the

4  Commissioner with respect to plaintiffs' applications are AFFIRMED.  The

5  findings of the Administrative Law Judge ("ALJ") are supported by substantial

6  evidence and are free from material error.[1]

7  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

8  **       DECISIONS**

9      **A.    Plaintiff Young's Application**

10     On April 7, 2008, plaintiff filed an application for Disability Insurance

11 Benefits.  (Administrative Record ("AR") 12, 79).[2]  Plaintiff asserted that he

12 became disabled on May 5, 2007, due to daily severe diarrhea and abdominal

13 cramping/pain, weight loss of 25 pounds, and need to go to the bathroom at least

14 7-10 times per day.  (AR 89).  The ALJ examined the medical record and heard

15 testimony from plaintiff (who was represented by counsel) and a vocational expert

16 on June 2, 2009.  (AR 28-56).

17     On January 26, 2010, the ALJ determined that plaintiff was not disabled

18 through the date of the decision.  (AR 12-22).  Specifically, the ALJ found:

19 (1) plaintiff suffered from the following severe combination of impairments:

20 malabsorption syndrome, duodenitis, colitis and anxiety disorder[3] (AR 14);

21

22

23     [1]The harmless error rule applies to the review of administrative decisions regarding
   disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
24 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
   Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
25 application of harmless error standard in social security cases).

26     [2]Although sequentially numbered, the Administrative Record was lodged with the Court
27 in three separate volumes.  (See Docket Nos. 16-18).

28     [3]The ALJ specified that plaintiff had "a severe combination of physical impairments" but
   "his mental impairment [was] non-severe."  (AR 14).

(2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 16); (3) plaintiff retained the residual functional capacity to perform the full range of sedentary work (20 C.F.R. § 404.1567(a)) (AR 16); (4) plaintiff could not perform his past relevant work (AR 20); (5) based on plaintiff's residual functional capacity to perform the full range of sedentary work, Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 section 201.21 directs a finding of "not disabled" (AR 21); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 17).

The Appeals Council denied plaintiff's application for review. (AR 1).

### B.    Plaintiff M.J.Y.'s Application

On April 9, 2008, plaintiff M.J.Y. submitted an application for Child's Insurance Benefits based on plaintiff Young's wage records. (AR 250-51, 259).

On January 26, 2010, the ALJ determined that plaintiff M.J.Y. did not qualify for such benefits in light of the ALJ's concurrent finding that plaintiff Young was not disabled. (AR 259-60).

The Appeals Council denied plaintiff M.J.Y.'s application for review. (AR 246).

## III.   APPLICABLE LEGAL STANDARDS

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing

3

any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

> (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> (2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.
>
> (3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> (4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

1       **B.**    **Standard of Review**

2         Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

3 benefits only if it is not supported by substantial evidence or if it is based on legal

4 error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

5 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

6 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable

7 mind might accept as adequate to support a conclusion." Richardson v. Perales,

8 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a

9 mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing

10 Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

11         To determine whether substantial evidence supports a finding, a court must

12 "'consider the record as a whole, weighing both evidence that supports and

13 evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.

14 Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

15 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming

16 or reversing the ALJ's conclusion, a court may not substitute its judgment for that

17 of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

18 **IV.**   **DISCUSSION**

19       **A.**    **The ALJ Properly Evaluated the Medical Evidence For Plaintiff**

20            **Young's Application**

21          **1.**     **Pertinent Law**

22         In Social Security cases, courts employ a hierarchy of deference to medical

23 opinions depending on the nature of the services provided. Courts distinguish

24 among the opinions of three types of physicians: those who treat the claimant

25 ("treating physicians") and two categories of "nontreating physicians," namely

26 those who examine but do not treat the claimant ("examining physicians") and

27 those who neither examine nor treat the claimant ("nonexamining physicians").

28 Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A

1    treating physician's opinion is entitled to more weight than an examining

2    physician's opinion, and an examining physician's opinion is entitled to more

3    weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion

4    of a treating physician is entitled to greater weight than that of a non-treating

5    physician because the treating physician "is employed to cure and has a greater

6    opportunity to know and observe the patient as an individual."  Morgan v.

7    Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

8    1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

9         The treating physician's opinion is not, however, necessarily conclusive as

10   to either a physical condition or the ultimate issue of disability.  Magallanes v.

11   Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

12   759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

13   contradicted by another doctor, it may be rejected only for clear and convincing

14   reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

15   quotations omitted).  The ALJ can reject the opinion of a treating physician in

16   favor of another conflicting medical opinion, if the ALJ makes findings setting

17   forth specific, legitimate reasons for doing so that are based on substantial

18   evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v.

19   Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out

20   detailed and thorough summary of facts and conflicting clinical evidence, stating

21   his interpretation thereof, and making findings) (citations and quotations omitted);

22   Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to

23   reject a treating physician opinion – court may draw specific and legitimate

24   inferences from ALJ's opinion).  "The ALJ must do more than offer his

25

26        [4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
27   draw bright line distinguishing treating physicians from non-treating physicians; relationship is
     better viewed as series of points on a continuum reflecting the duration of the treatment
28   relationship and frequency and nature of the contact) (citation omitted).

conclusions." <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  <u>Id.</u>  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

## 2.    Pertinent Facts

In a Medical Source Statement dated June 10, 2009, Dr. Oliver M. Burrows, plaintiff's primary care physician, indicated that although plaintiff experienced "GI distress, diarrhea/pain," there was "no diagnosis yet" for plaintiff's condition and diagnostic testing was "still inconclusive."  (AR 242).  Dr. Burrows, nonetheless, opined that plaintiff (i) experienced chronic diarrhea, loose stools, loss of appetite, bloody diarrhea, incontinent stools, abdominal pain and cramping, weight loss, mucus in stool, and inability to concentrate; (ii) could tolerate low work stress; (iii) had pain that would interfere with plaintiff's ability to concentrate and pay attention for 2/3 of a normal eight-hour work day; (iv) would likely miss work four or more days per month due to "cramping/bloody stools/diarrhea"; (v) would need to take unscheduled breaks on average eight times in an eight-hour work day (*e.g.*, approximately every hour) due to plaintiff's pain and "frequent[,] hard to control need to use [the] toilet"; (vi) would need a work station located within 20 feet of a bathroom; (vii) could occasionally lift and/or carry 20 pounds or less; (viii) could never balance or climb ladders/ scaffolds; (ix) could occasionally crouch, crawl, stoop, kneel, bend, squat, operate foot pedals, repetitively push/pull with feet, and be exposed to temperature extremes; (x) could stand and/or walk in a single position for only 10-15 minutes at a time for a total of less than two hours of standing/walking in an eight-hour day; (xi) would need to shift positions from sitting to standing or walking approximately every 10-15 minutes to relieve cramps; (xii) could sit in a single position for only 5-10 minutes at a time for a total of less than two hours of sitting

1    in an eight-hour day; (xiii) has a psychological condition (*i.e.*, anxiety) which

2    affects plaintiff's physical condition; and (xiv) is not "capable [of] sustaining a

3    typical work week . . . in [a] competitive work environment" because plaintiff

4    "needs frequent toilet breaks."  (AR 242-44).

5                        **3.    Analysis**

6            Plaintiff contends that a remand or reversal is warranted because the ALJ

7    improperly rejected Dr Burrows' opinions.  (Plaintiffs' Motion at 9-16) (citing AR

8    242-44).  The Court disagrees.

9            First, as the ALJ correctly pointed out, the record medical evidence as a

10   whole does not support Dr. Burrows' opinion that plaintiff was essentially

11   incapable of performing even sedentary work.  For example, Dr. Burrows' own

12   Medical Source Statement indicates that Dr. Burrows had reached "no diagnosis"

13   related to plaintiff's "GI distress[,] diarrhea [and] pain," and that the results of any

14   diagnostic testing were "inconclusive."  (AR 242).  As the ALJ noted, progress

15   notes from Dr. Samuel Mourani, one of plaintiff's treating gastroenterologists,

16   also do not support Dr. Burrows' opinion.  Dr. Mourani indicated that "extensive

17   diagnostic workups" for plaintiff consistently produced negative results.  (AR 14,

18   17) (citing Exhibit 8F at 1, 4 [AR 226, 229]).  Dr. Mourani's physical

19   examinations of plaintiff revealed either no tenderness or, at most, "mild diffuse

20   tenderness" in plaintiff's abdomen.  (AR 17) (citing Exhibit 8F at 1-2, 4 [AR 226-

21   27, 229]).  In May 22, 2008, Dr. Mourani stated "[Plaintiff] seems to be stabilizing

22   at this point and has no further significant weight loss and his gastrointestinal

23   symptoms are becoming less prominent."  (AR 18) (citing Exhibit 8F at 4 [AR

24   229]).  Although plaintiff saw Dr. Mourani again on July 17, 2008, he did not

25   return for a follow up visit after that until eight months later (*i.e.* March 16, 2009)

26   – which, as the ALJ noted, suggests that Dr. Mourani's assessment that plaintiff's

27   condition had stabilized was correct.  (AR 18-19) (citing Exhibit 8F at 2-4 [AR

28   227-29]).  In an April 6, 2009 follow up note, Dr. Mourani stated that the report of

8

1    a UCLA second opinion/consultation "[did] not provide much insight" into

2    plaintiff's condition. (AR 226, 228). Plaintiff correctly notes that Dr. Mourani

3    sent several letters to Dr. Burrows reporting plaintiff's treatment progress[5] (AR

4    196-202), and that Dr. Michael Chu, another treating gastroenterologist, also

5    diagnosed plaintiff with chronic diarrhea, malabsorption syndrome and abdominal

6    pain.[6] (AR 141-54). Nonetheless, plaintiff fails to show that such medical records

7    – which contain findings that are, at most, cumulative of those reflected in Dr.

8    Mourani's treatment notes – lend any support to Dr. Burrows' opinions.

9       The ALJ also noted that plaintiff's medical records do not reflect any

10    extreme weight loss, anemia or dehydration "which would be expected if

11    [plaintiff] had the frequency of bowel movements alleged," and that plaintiff's

12    records do not reflect "neurological deficits, such as muscle weakness and

---

14       [5]In a November 15, 2007 progress report to Dr. Burrows, Dr. Mourani stated, *inter alia*,
15 that (i) a colonoscopy and upper endocsopy with biopsies of plaintiff's colon and small bowels
16 "were unremarkable"; (ii) plaintiff's stool tests and thyroid function were normal, with slightly
elevated liver enzymes and calcium levels; (iii) a CT scans of plaintiff's pelvis and abdomen
17 showed, respectively, asymmetrical cecal tip and "narrowing in the distal travers colon"; (iv) an
ultrasound suggested "thickening of small bowel lops and lymphandenopathy"; and (v) although
18 plaintiff did have malabsorption syndrome, neither inflammatory bowel disease nor
gastrointestinal mucosal disease were suspected. (AR 201-02). A November 26, 2007 progress
19 report reflected that (i) plaintiff had no abdominal tenderness, laboratory tests were
20 "unremarkable," and extensive workup was "negative" (ii) CT scan and ultrasound findings
suggested "abnormal thickening of the bowel" and "thickening of the cecum"; and (iii) Dr.
21 Mourani referred plaintiff for evaluation of the "abnormality noted on CT scan and ultrasound."
22 (AR 199-200). On February 25, 2008, Dr. Mourani reported that further evaluation of plaintiff
was "unremarkable," and that plaintiff was sent for additional testing. (AR 198). On April 24,
23 2008, Dr. Mourani stated that (i) "[plaintiff's] recent colonoscopy was essentially unremarkable
24 including the biopsies"; (ii) "[plaintiff] reported . . that he had some improvement in his diarrhea
when [given] . . . pancreatic enzymes"; and (iii) "[plaintiff's] abdomen [was] soft with mild
25 diffuse tenderness." (AR 196-97).

26       [6]Plaintiff alleges that Dr. Chu diagnosed plaintiff with chronic diarrhea, malabsorption
27 syndrome and abdominal pain based, in part, on a colonoscopy which found "subtle mucosal
edema, rectum and sigmoid colon, with small rectal polyp and rule out mild inflammatory bowel
28 disease." (AR 141-54).

1   wasting, that would be expected if [plaintiff had] been as inactive for so long as

2   alleged." (AR 17).

3          Therefore, to the extent the ALJ rejected Dr. Burrows' opinions, he properly

4   did so for clear and convincing reasons based on substantial evidence. See Bayliss

5   v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (A discrepancy between a

6   physician's notes and recorded observations and opinions and the physician's

7   assessment of limitations is a clear and convincing reason for rejecting the

8   opinion.); see also Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating

9   physician's opinion properly rejected where treating physician's treatment notes

10  "provide no basis for the functional restrictions he opined should be imposed on

11  [the claimant]"); cf. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (an

12  ALJ need not accept a treating physician's opinions that are conclusory and brief,

13  or unsupported by clinical findings or physician's own treatment notes).  Although

14  plaintiff contends that the foregoing medical evidence actually supported Dr.

15  Burrows' opinions, the Court will not second guess the ALJ's reasonable

16  determination that it did not, even if such evidence could give rise to inferences

17  more favorable to plaintiff.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

18  2001) (not court's role to second-guess ALJ's reasonable interpretation of the

19  evidence) (citation omitted).

20         Second, each of Dr. Burrows' opinions as to plaintiff's most significant

21  functional limitations was based solely on plaintiff's subjective complaints, which,

22  as discussed below, the ALJ properly found not credible to the extent they were

23  inconsistent with the ALJ's residual functional capacity assessment.  For example,

24  Dr. Burrows indicated that his responses in the June 10, 2009 Medical Source

25  Statement were based on plaintiff's symptoms of "GI distress[,] diarrhea [and]

26  pain." (AR 242).  More specifically, Dr. Burrows' opinion that plaintiff would

27  likely miss work four or more times a month was expressly based on plaintiff's

28  subjective symptoms of "cramping," "bloody stools," and "diarrhea." (AR 242).

Dr. Burrows' opinion that plaintiff would require multiple unscheduled breaks during each workday was expressly based on plaintiff's complaint of "frequent, hard to control need to use [the] toilet" and plaintiff's need to "relieve . . . pain." (AR 243, 244).  Dr. Burrows' opinion that plaintiff must be allowed to change positions essentially every 10-15 minutes throughout the workday was based on plaintiff's need to "relieve cramps."  (AR 243).  In fact, Dr. Burrows' ultimate conclusion that plaintiff was "[in]capable [of] sustaining a typical work week . . . in [a] competitive work environment" was itself based solely on plaintiff's "need[] [for] frequent toilet breaks."  (AR 244).  Therefore, the ALJ properly rejected such opinions which were based entirely on plaintiff's symptoms.  See, e.g., Bayliss, 427 F.3d at 1217 (substantial evidence supported ALJ's rejection of treating physician's opinion that was "not supported by clinical evidence and was based on [claimant's] subjective complaints"); cf. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (citation omitted) ("[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.").

Accordingly, a reversal or remand is not warranted on this basis.

**B.    The ALJ Properly Evaluated Plaintiff Young's Credibility**

**1.    Pertinent Law**

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it.  Rollins, 261 F.3d at 857.

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the

11

claimant's statements about the symptoms and their functional effect.  <u>Robbins</u>, 466 F.3d at 883 (citations omitted).  Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons.  <u>Carmickle v. Commissioner, Social Security Administration</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted).  The only time this standard does not apply is when there is affirmative evidence of malingering.  <u>Id.</u>  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (<i>e.g.</i>, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (<i>e.g.</i>, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment).  <u>Orn</u>, 495 F.3d at 636; <u>Robbins</u>, 466 F.3d at 883; <u>Burch</u>, 400 F.3d at 680-81; SSR 96-7p.  Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment.  <u>Burch</u>, 400 F.3d at 681.

## 2.   Analysis

As the ALJ notes, plaintiff's subjective symptoms included allegations that plaintiff (i) had severe abdominal pain; (ii) used the bathroom seven to 10 times a day due to severe diarrhea and nausea; (iii) did not have much energy for anything; (iv) could not concentrate on work due to his frequent need to use the bathroom; and (v) was incapable of performing even sedentary work.  (AR 16-17)

1   (citing AR 49-55; Exhibit 1E at 2 [AR 89]; Exhibit 3E at 1 [AR 103]; Exhibit 4E

2   at 1, 3 [AR 105, 107]; Exhibit 8E at 2, 5 [AR 124, 127]).  Plaintiff contends that

3   the ALJ inadequately evaluated the credibility of his subjective complaints.

4   (Plaintiffs' Motion at 16-26).  The Court disagrees.

5          First, an ALJ may properly discount a plaintiff's credibility based on an

6   unexplained failure to seek treatment consistent with the alleged severity of

7   subjective complaints.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)

8   (en banc) (In assessing credibility, the ALJ may properly rely on plaintiff's

9   unexplained failure to request treatment consistent with the alleged severity of her

10  symptoms.); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (In assessing

11  credibility, ALJ properly considered doctor's failure to prescribe and claimant's

12  failure to request any serious medical treatment for supposedly excruciating pain);

13  see Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of treatment and

14  reliance upon nonprescription pain medication "clear and convincing reasons for

15  partially rejecting [claimant's] pain testimony"); Fair, 885 F.2d at 604 (ALJ

16  permissibly considered discrepancies between the claimant's allegations of

17  "persistent and increasingly severe pain" and the nature and extent of treatment

18  obtained).  Here, as the ALJ noted, in spite of plaintiff's complaints of severe

19  abdominal cramping and uncontrolled diarrhea, plaintiff did not seek treatment

20  from Dr. Mourani for an eight month period (i.e., from July 17, 2008 to March 16,

21  2009).  (AR 17-19) (citing Exhibit 8F at 2-3 [AR 227-28]).  In addition, although

22  Dr. Mourani indicated that plaintiff's alleged anxiety disorder "likely contribut[ed]

23  significantly to [plaintiff's] problems," plaintiff did not seek any specialized

24  treatment for anxiety short of a brief change in medication.  (AR 18) (citing

25  Exhibit 4F at 2-3 [AR 196-97]; Exhibit 8F at 4 [AR 229]; Exhibit 10F at 1 [AR

26  242]).  The ALJ also noted that plaintiff stopped taking Questran because it made

27  plaintiff "feel constipated," yet the Questran apparently was successful in reducing

28  the frequency of plaintiff's bowel movements.  (AR 18) (citing Exhibit 1F at 9-10

13

1    [149-50]).  Plaintiff also refused to wear protective undergarments in order to

2    address his allegedly uncontrollable diarrhea.  (AR 19).

3          Second, an ALJ may discredit a plaintiff's subjective complaints due to

4    internal conflicts within the plaintiff's own statements and testimony.  See

5    Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended

6    (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies

7    either in [plaintiff's] testimony or between his testimony and his conduct"); see

8    also Fair, 885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based

9    on contradictions in plaintiff's testimony).  Here, the ALJ reasonably questioned

10   the alleged frequency of plaintiff's diarrhea since plaintiff's complaints of

11   significant weight loss appeared inflated compared with the medical records of

12   plaintiff's actual weight fluctuations.[7]  (AR 18).  The ALJ also noted that,

13   although plaintiff apparently obtained some relief while taking Questran, when

14   specifically asked at the hearing about his use of Questran and its effectiveness,

15   plaintiff could not recall anything about it.  (AR 18) (citing AR 44).  In addition,

16   while plaintiff claimed he was unable to concentrate at work, in a fatigue

17   questionnaire he stated that he was able to maintain concentration and attention in

18   order to finish tasks.  (Compare AR 89 with AR 104).  The ALJ properly relied on

19   _____

20         [7]The ALJ stated the following:

21         Moreover, [plaintiff's] complaints of weight-loss are somewhat inflated and I
22         therefore also question the alleged frequency of his diarrhea.  On January 31,
           2007, [plaintiff] weighed 158 pounds (Exhibit 2F, p. 2 [AR 173]).  On March 23,
23         2007, he weighed 153 pounds (Exhibit 2F, p. 3 [AR 174]).  On April 9, 2007,
           [plaintiff] weighed 153 pounds (Exhibit 1F, p. 2 [AR 142]).  On July 9, 2007,
24         [plaintiff] reported that he lost 22 pounds in three or four months; he then
           weighed 141 pounds (Exhibit 1F, p. 4 [AR 144]), which was 12 pounds less than
25         in March or April.  On October 9, 2007, [plaintiff]  reported losing 20 pounds in
           six months (Exhibit 1F, p. 10 [AR 150]); he then weighed 140 pounds (id.),which
26         was 13 pounds less than on April 9, 2007.

27

28   (AR 18).

                                        14

1   such inconsistent statements to discount plaintiff's credibility.  See Tonapetyan,

2   242 F.3d at 1148 ("In assessing the claimant's credibility, the ALJ may use

3   'ordinary techniques of credibility evaluation,' such as considering the claimant's

4   reputation for truthfulness and any inconsistent statements in her testimony.").

5          Third, the ALJ properly discredited plaintiff's subjective complaints as

6   inconsistent with plaintiff's conduct.  See Thomas, 278 F.3d at 958-59

7   (inconsistency between the claimant's testimony and the claimant's conduct

8   supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d

9   1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and

10  actions cited as a clear and convincing reason for rejecting the claimant's

11  testimony).  For example, contrary to plaintiff's allegations that he could not do

12  even sedentary work and that he experienced medication side effects, plaintiff

13  continued to drive and was able to perform several household tasks (e.g., lifting a

14  laundry basket six times per week, carrying a full trash bag five times per week,

15  washing dishes, doing laundry) with interruption from his symptoms.  (AR 19,

16  106-07).  In addition, the ALJ noted that during an initial interview with plaintiff,

17  a Social Security claims representative did not observe plaintiff having any

18  difficulty with sitting, standing, walking or concentrating.  (AR 19) (citing Exhibit

19  2E at 2-3 [AR 100-01]).

20         Fourth, an ALJ may discredit a plaintiff's subjective symptom testimony

21  due, in part, to the absence of supporting objective medical evidence.  Burch, 400

22  F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be

23  rejected on the sole ground that it is not fully corroborated by objective medical

24  evidence, the medical evidence is still a relevant factor in determining the severity

25  of the claimant's pain and its disabling effects.") (citing 20 C.F.R.

26  § 404.1529(c)(2)).  Here, as the ALJ noted and as discussed above, contrary to

27  plaintiff's allegations of significant symptoms, the objective medical evidence

28  reflects mostly unremarkable findings in spite of extensive diagnostic workups.

1   Moreover, as the ALJ also noted, plaintiff's medical records do not reflect any
2   extreme weight loss, anemia or dehydration "which would be expected if
3   [plaintiff] had the frequency of bowel movements alleged," or any "neurological
4   deficits, such as muscle weakness and wasting, that would be expected if [plaintiff
5   had] been as inactive for so long as alleged."  (AR 17); see, e.g., Meanel, 172 F.3d
6   at 1114 (plaintiff's testimony that she "experienced constant pain that required her
7   to lie in a fetal position all day and precluded her from performing virtually any
8   type of work" found not credible because plaintiff "did not exhibit muscular
9   atrophy or any other physical signs of an inactive, totally incapacitated
10  individual").  As the ALJ also noted, plaintiff alleged that some of his medications
11  caused drowsiness, dizziness and blurred vision, yet none of plaintiff's treatment
12  notes reflect any chronic or significant medication side effects or efforts to
13  accommodate such side effects.  (AR 17-18).

14        Accordingly, a reversal or remand is not warranted on this basis.

15  **C.   Plaintiff Young Is Not Entitled to a Remand Based on New**
16        **Evidence Submitted to the Appeals Council**

17        Plaintiff contends that a remand is warranted to permit the ALJ to consider
18  new and material evidence plaintiff submitted to the Appeals Council after the
19  ALJ issued his decision.  (Plaintiffs' Motion at 26-29; Plaintiffs' Ex. B).  The
20  Court disagrees.

21        On appeal, this Court usually considers any additional evidence that the
22  Appeal's Council considered in connection with a claimant's request for review.
23  Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); Harman v. Apfel,
24  211 F.3d 1172, 1179-80 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); see also
25  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (to warrant remand
26  plaintiff must show that new evidence considered by Appeal's Council is material
27  to determining plaintiff's disability).  As defendant correctly points out, however,
28  plaintiff fails credibly to demonstrate that he submitted new evidence with his

1  request for review much less that the Appeals Council considered such evidence.

2  (Defendant's Motion at 11; Plaintiffs' Ex. B).

3         Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

4        **D.    Plaintiff M.J.Y. Is Not Entitled to a Reversal or Remand**

5         For the reasons stated above, the ALJ's determination that plaintiff Young

6  was not disabled is supported by substantial evidence and free from material error.

7  Therefore, plaintiff M.J.Y. fails to demonstrate that the ALJ erred in finding that

8  plaintiff M.J.Y. does not qualify for Child's Insurance Benefits based on plaintiff

9  Young's alleged disability.

10         Accordingly, plaintiff M.J.Y. is not entitled to a reversal or remand on this

11  basis.

12  **V.    CONCLUSION**

13         For the foregoing reasons, the decisions of the Commissioner of Social

14  Security with respect to plaintiffs' applications are affirmed.

15         LET JUDGMENT BE ENTERED ACCORDINGLY.

16  DATED:  March 30, 2012

17                               /s/

18                         Honorable Jacqueline Chooljian

19                         UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28